Good morning, your honors. My name is Caroline Borland, and I represent the appellant, Leonard Williams. Good morning. My name is Rita Kiliatchis. I'm an assistant state's attorney representing the people of the state of Illinois. May it please this court, as this court is aware, we have raised issues relating to both the trial and the sentence in this case. Since there is not an apparent dispute between the parties on the sentencing issue, I will be times in the record where if the transcript did not identify the name of the particular attorney acting at any given moment, it would be difficult to ascertain whether it was the prosecutor or defense counsel. At trial, he bolstered the state's identification evidence while failing to meaningfully test the circumstantial evidence in the case. He also displayed a lack of understanding of either the law or the charges throughout all stages of this proceeding. These proceedings lost their character as a confrontation between adversaries and there cannot be any confidence of when he was deficient or of when counsel, when we've alleged he was deficient. I think the strongest inference is when it comes to the state's identification evidence. In fact, defense counsel said this was what the case hinged on was the ID evidence. If you look at the state's evidence, Mr. Moore testified that one day after these events, he went to a lineup, identified my client, Mr. Williams, as the man who had been involved in the offense. And at that time, he recognized him as someone he also knew from the streets. He thought his name was Little Earl. He didn't know anything about him. Otherwise, he'd seen him around from time to time, thought he recognized him at a card game. Defense counsel then, in opening statement, said this case, in a case of identification, you will hear evidence that the victim identified my client, that they've known each other for many years, and in fact, that Mr. Moore recognized Williams' voice during the events themselves in the car. He then, in fact, revealed that this was based on a mistake of fact. He stated at the close of the state's evidence that he believed that Moore had said that he recognized Williams from the card game, despite the trial court's repeated instruction to him that that was not correct and not even a fair inference. Defense counsel persisted in that theory. Logically, where this is a case of where defense counsel is trying to argue an unreliable identification, the very theory of itself in presenting that these two individuals knew each other greater than the state had presented was illogical. It might have made sense under what defense counsel seemed to support as the reason for this evidence, being that the victim had a motive to falsely accuse Mr. Williams. But he failed in his attempts to present both of the evidence that was necessary to pursue that theory because he was not familiar with the law. He did try to claim that, in a valid claim, that Mr. Moore may have been motivated to falsely accuse Mr. Williams because of the evidence of a dispute about the card game, a dispute at a card game. He asked Mr. Moore if there had been a dispute at a card game where Mr. Williams was present. He denied it. Counsel then tried to present his own witness to testify this fact. However, he asked him the question, were you at a card game and did you overhear Mr. Moore claim there was a dispute? This question called for hearsay. The trial court properly sustained it. Defense counsel never followed through by it. But so what? What is the effect of all of that? The effect of that was that, in the end, he never presented either piece of the two evidence that was necessary to support his theory, being the card game and being this general evidence of a lack of credibility on Moore's behalf from the prior conviction. And at the same time, he repeatedly elicited damaging information that the trial court used to rely on to find Mr. Williams guilty. To accuse what? He repeatedly asked several defense witnesses to talk about the relationship, as they knew, between Williams and Moore. And they presented evidence that they had seen each other on social occasions and talked. From this evidence, the trial court made the inference that Williams knew Moore in addition to Mr. Moore only knowing Williams. And that threatened the identification, not weakness? Exactly. And that's how the trial court relied on it. He specifically said, I find, if you corroborate Mr. Moore's identification, because it makes sense that Williams would have tried to disguise himself. In the process, defense counsel also elicited evidence that Mr. Moore had said that one of the offenders in the car said, oh, Lord, we're going to have to kill him. Not only did defense counsel get out that he made this statement in court, he got out that Mr. Moore had made the same statement to the police before trial. Was there any testimony as to who made that statement? I thought it was one of them said it, but nobody was sure. There were two offenders in the car, and there was no testimony as to which one said it. And that's correct. The trial court did find that it was likely Mr. Williams who said that, because again, it was this Mr. Williams knows Moore. So once he realized that and he thought he might be identified, he pondered the idea of killing him. And it's also interesting that in opening statement, defense counsel had said he believed that the evidence would show that Mr. Moore heard Williams' voice during the encounter. All of those things, let's assume that all of that is true. Are you saying that but for those things, the outcome of this case would have been different? I think that inference can be made. If you look at the state's evidence alone, you've got someone who identifies someone who they've seen on the street, and then you have another identification at trial that was not based on that she had failed. That was from Dion Montgomery, and she had failed to make an identification in the lineup. If you take that evidence together, there actually is an inference. Maybe Mr. Moore actually did accidentally identify Mr. Williams. I mean, they found him with the guy's car keys in his car, in his pocket. The victim's material close to where the cop saw him tossed something. And this is what the trial court, in fact, relied on the most. He said that that was the most... I mean, the evidence against your client was very strong, Ms. Borland. So you're saying that but for... And you may be right that some of the things that the defense counsel did, maybe you should have done it differently. But I'm not getting the level of ineffectiveness that you're talking about here. And I think the salient question is, would the outcome of this case have been different but for these various glitches that you're talking about? And there was some pretty strong evidence here against your client. He was basically caught with the goods in his pocket. And I think this is where defense counsel's deficiency in failing to develop his defense case, where that circumstantial evidence comes into play. We know that defense counsel believed that the fact that a van was found near the scene of the events with tires from Mr. Williams' car, from Mr. Moore's car, was important. How about the car keys of the hijacked car in your client's pocket? The inference could be made that although he was involved in doing something to the car and stripping it, he still had not been involved in the actual events themselves. They occurred at a different location. And if you look specifically at defense counsel's failure to present evidence of that van, let's say, for example, that the ownership of that van belonged to my client. How about the running with the keys in the pocket and tossing the gun away when the cops are approaching and say, stop, police? Does that infer anything? I think it allows an inference that he could have been involved in stripping of the car and that he had a gun. It doesn't necessarily tie him to the events. And the fact that defense counsel... Do you really believe that? I think we don't know since there was no proper testing. Since we know defense counsel had a theory, didn't present that evidence. And if you look at the gun, Mrs. Montgomery had only said that she'd seen a shiny silver gun. So her ability to identify that gun as involved in the events, there's many guns that are shiny and silver. So there could have been, truly, since defense counsel kept advancing this theory, there could have been a defense to that circumstantial evidence. And the fact that we know... You can identify the gun that was pointed at him. That's in the record. And that's the same gun that the defendant, your client, tossed when the cops were chasing him when he had the carjack keys in his pocket. That's pretty strong evidence, counsel. That was from Mrs. Montgomery. Mrs. Montgomery who had identified the gun that they found attached to... from Williams. And I think it is pretty strong evidence on its face. I think you also have to consider that Montgomery was the same witness who claimed that she'd made an identification in the lineup when that wasn't true. And you have to consider that her testimony itself only described the gun as a shiny metal object. I think this is why it's an ineffective assistance claim and not necessarily a straight-up reasonable doubt claim, because we know defense counsel believed, first of all, that there was evidence he couldn't present about this van. He was not able to make the arguments in presenting his defense. And then we also know that when he was not able to make that argument, he simply gave up on testing the evidence. Well, the trial court can draw all reasonable inferences from the evidence that's presented. And as we know, it's a long line of Illinois cases. Circumstantial evidence is sufficient to convict, because this is not a game of gotcha. It's a game of sufficiency of the evidence. And the question is, was this evidence sufficient? And the prior facts seem to think it was. And, you know, we're an appellate court. We can't go back and redo and rewrite the facts. So I'm asking you, with some specificity, to highlight for us, what is it specifically that made this counsel so ineffective that this conviction should be reversed? He bolstered the state's identification case, the state's identification evidence, in a case where it is doubtful whether the state would have been able to prove that identification on its own. In those same proceedings, he failed to properly, meaningfully test any of this other evidence, which was relied on by the trial court, even though he tried to pursue a defense in that regard. And then if you look at all of the other instances in the record where he just displayed a lack of understanding of the law, even under Strickland, if you consider what would have happened but for trial counsel's errors, you can see maybe a reasonable probability that a different trial would produce a different outcome. If you don't have defense counsel bolstering that identification, you have defense counsel presenting the defense he hoped to achieve on the circumstantial evidence. There is a reasonable probability that there could be a different outcome. In addition, counsel's errors in this case, he didn't know that you could not quash an arrest and all of the things that followed it simply by showing police activity. He didn't know there had to be evidence that stemmed from that. At various points, he was confused on what charges were proceeding. So if you consider all of those factors in addition, then this really was a breakdown in the adversarial process. Like as I said in the introduction, you can't tell at various points of this proceeding if it was defense counsel or the prosecutor asking the questions. The trial court, in its ruling, relied substantially on evidence solicited by defense counsel in this case, and also told defense counsel over and over again, I need to explain to you that the circumstantial evidence is sufficient to convict. And defense counsel kept saying, it's not the heart of the case. So under chronic, I think we do have a good chronic argument. And also- The trial court, as a prior fact, and this was a bench trial, and the trial court specifically found that the circumstantial evidence was sufficient, as the judge says, was more than sufficient to convict the defendant, even without Moore's identification. I mean, the trial court made a specific finding, and you're asking us, based on these facts, to say that the trial court was wrong. I don't think the trial court was wrong based on the evidence presented. I think defense counsel's deficiencies cast doubt on the outcome of that. The trial court, I think, made the decision that it probably should have made in this case. But you have defense counsel who wasn't presenting the evidence he believed necessary to test that evidence. And so I'm saying there's no confidence in the trial court's ruling. You've briefed, you've briefed an invitation to us to no longer follow Strickland and go along with chronic. Why? Because in this case, chronic says- What's wrong with Strickland? Why should we deviate from that? I think the facts of this case are sufficient to rise to a level of a chronic violation. And that's why we've made that claim, because there was a breakdown in the process. I also think under Strickland, this court can find the same analysis, because there cannot be confidence in the outcome of these proceedings. So I'm not asking this court to abandon Strickland. I'm proposing alternatives, because I think we can satisfy both of those alternatives. I think, unless this court has any other questions, I'll save my time for rebuttal. I will say, in a case where defense counsel bolstered the state's identification case and failed in any meaningful way to challenge the circumstantial evidence, it was ineffective. Defendant's reliance on- You're being recorded, so you have to state your name. Okay, I'm sorry. Rita Kalachis again. I'm an assistant state's attorney representing the people of the state. Defendant's reliance on chronic is basically a transparent attempt to avoid the prejudice requirement under Strickland, which he cannot do. There's no prejudice occurred here, because the defense counsel subjected the state's case to meaningful adversarial testing, despite the strength of the state's circumstantial proof. The circumstantial proof showed that the defendant's close proximity to the stolen vehicle and stripped vehicle when he fled from the police, he dropped the gun, same gun that the victims identified as being used in the carjacking, the victim's identification found by the gun, the victim's positive IDs of the defendant as one of the two assailants, both at trial and with respect to Mr. Moore at the line-up. I'd like you to talk a little bit about the undermining, what your opponent raised, the eliciting testimony from the witness that the statement was made about, oh, we're going to have to kill him. And the trial court specifically found that this was, this kind of undermined the defense theory of unreliable identification. Can you talk about that a bit? Regardless of what the court decided, that statement, first of all, it didn't go to any of the charges that were brought in this case. So there was no murder, nothing happened, nobody was hurt in that fashion. Second of all, the defendant or the victim never identified which of the two offenders made that statement. Did it prejudice the defendant in any way? I would say that it did not, because it was not attributed to the defendant, and ultimately it did show that this particular victim, Mr. Moore, was probably extremely agitated and confused at the time of the carjacking, and whether or not he should have done that. Whether or not he should have been able to recognize the voice of the defendant or recognize his face from his eyes and nose is really irrelevant. It's irrelevant? It's not irrelevant, but it doesn't, there's a reason why that could have happened, why he did not recognize the defendant from his previous contacts with the defendant. There was no undermining of the identification by the line of questioning that the defense counsel engaged in. Defense counsel's theory of defense, which he had developed and created, was that this   was a very difficult case, and it was very difficult to assail the circumstantial evidence in this case. There really wasn't that much that he could do. This was a difficult case. So he focused on the identification evidence, and what he tried to show is that the reason this defendant was not recognized or was recognized by the victim was because the victim knew this guy. He had played cards with him in the past. So when the victim, two reasons, and he also tried to show that there was an underlying motive to falsely accuse the defendant by Mr. Moore, because of an alleged dispute at a card game. Well, the second part didn't pan out because Mr. Moore flatly denied that there was such a dispute when he testified on cross-examination. However, the second part of the identification issue remained that Mr. Moore should have been able to recognize the defendant at the time of the carjacking because he knew him, and his failure to do so also points to some sort of a problem with the reliability of that lineup. At numerous instances during the trial, defense counsel attempted to show that the defendant knew the victim and the victim knew the defendant, and that's why he called those four witnesses at the end of his case to show that once again. And even though he was not able to get into the possible motive for falsely accusing the defendant of this crime, he was still able to argue that defendant, that the victim was not able, or was able to identify the defendant only because he saw him prior, at a prior time. Under the Strickland standard, it leaves room for criminal defense counsels to make mistakes and to lose cases, which happened in this case. There were mistakes made, and the state won this  It's possible to do that under Strickland while still subjecting the prosecution's case to constitutionally meaningful adversary testing, and that's the linchpin of the right to effective representation. In this case, defense counsel made the best of a difficult, difficult case. He did so because he filed a suppression motion, and he did so because he felt that there was no better strategy or way to do that, which exemplifies the wisdom of Strickland's prejudice prong. In this case, trial counsel fulfilled his constitutional obligation to provide reasonably competent professional assistance, and he did so because he filed a suppression motion, conducted a suppression hearing, made an opening statement, cross-examined each of the people's witnesses, made a motion for judgment of not guilty or acquittal, presented four witnesses on behalf of his client, made a closing argument, filed a motion for a new trial, argued in mitigation at the sentencing hearing. Furthermore, trial counsel developed a theory of defense that rested primarily on showing that the defendant was guilty, and this gives a flavor to the entire case. This was not a jury case. This was not a jury trial. Your opponent basically argued that no one of these things individually were devastating, but there were so many issues with the trial judge having to essentially prompt the defense lawyer, and at the sentencing hearing, although the case was set, the lawyer shows up with no file, and he couldn't respond to the judge's question about the pre-sentencing investigation because he didn't have his file, although the case was set for that day, and basically the court refused his request for a continuance. All of those things taken together, according to your opponent, while singularly they may not rise to the challenge, they're just a lot of things taken together. What do you say to that? Well, first the sentencing is off the table for purposes of this discussion, but next... Well, not necessarily. No, it's not off the table because I asked you about it. Okay. It's all part and parcel of this entire trial, so although you may have agreed on it, it's not off the table. I asked you about it. That was an issue. He went to court without his file. Is that effective representation? That's my question. Just because he didn't have his file and the defendant was sentenced? Well, there was more than that, counsel. I think the judge asked him whether he had any corrections to be made or any issue with the pre-sentencing investigation report, and he responded, Judge, I can't really say. I don't remember. I didn't bring my file today, and my question is, is it good representation to go to court in a criminal case where you're representing a defendant on a day that's been pre-sent without your file so that you can't respond to questions from the court that are contained in your file? If I may, that problem was cured because defense counsel was provided with a copy of the pre-sentence investigation and had an opportunity to review it before he commented. Right, but that's her point, counsel, that the court again had to prop him up, if you will, because the court said, okay, I'm going to pass this case for five minutes, give you a chance to go look at, maybe you can either look at the court copy or at the state's copy of the pre-sentencing investigation and then come back in a few minutes. So my question is still the same. How do you respond to your opponent's charge, if you will, that all of these things show a general lack of effective and crisp representation of this defendant by the court? As Strickland says, the Sixth Amendment requires competent, not perfect representation. Everyone makes mistakes, including the lawyers who represent criminal defendants. In this case, basically, defendant's argument is focusing on the first prong of Strickland, which is the performance prong, and the quality of the defense counsel's representation. We don't even need to reach that at this point, because there was no prejudice proved in this case. The defense cannot prove prejudice, because this was an extraordinarily strong case for the people. Therefore, this trial was not presumptively unreliable, and the defendant is not entitled to avoid the two-pronged analysis, which is the Strickland standard, which requires him to prove both performance and prejudice. And as all the cases interpreting Strickland and Strickland itself says, there's no reason to engage in a performance or first-pronged analysis where the case falls, as it does here, on the prejudice prong. Where the circumstantial evidence was unassailable, defense counsel chose the best available strategy here, to attack the next weakest link, and that was the defendant's identification. There was not much room to maneuver for the defense counsel, even if defense counsel had not made any of the mistakes cited by the defense in this case. There is no reasonable probability that the judge in this case, the trier of fact, would have found defendant not guilty. I have a question that's in a little different direction. In your conclusion, you asked this Court to incorporate a judgment to award, say, the fee of $100 and additional charges. I'm not sure what you mean by that. I've seen this recently in some of the state's cases. Is this a new trend, or what is it? No, I've been with this office for 11 years, and it's been in every single conclusion that we've ever written, so I'm not, I think it's statutorily, the statutory sites are in the conclusion. Anything else, Your Honors? No, ma'am. Thank you very much. Ms. Moreland, brief rebuttal, please. Thank you, Your Honors. I will just touch on a few points as quickly as I can. The first is that the statement about, oh, Lord, we are going to have to kill him, was one of the most damaging things that could have occurred in this case. It was, we know, because this was a trial court binge trial, the trial court relied directly on this to find that it corroborated the idea in this case, and also considered substantively inflammatory that my client considered killing the victim in this case. There have been numerous cases, we cited them in the brief, I won't go into the details, but Orta, Phillips, and Jackson are the cases. When you elicit damaging evidence that the trial court relies on to find the client guilty, it's held ineffective under Strickland. And the problem with this theory of defense counsel in showing that he should have recognized the victim earlier, is that all of the evidence, and because of this prior relationship between them, is that they had this relationship because Mr. Moore was friends with William's aunt. There needs to be some sort of, you're going to be careful in an identification of the relative of your friend. Defense counsel needed that mode of evidence to successfully present that theory, and he was never able to do so. And then, very briefly on the circumstantial evidence, what we do know about the circumstantial evidence is that defense counsel did believe this man was guilty, but he was never able to do so. So in this case, where defense counsel did show up for sentencing unprepared, was demonstrably confused, he did not seem to have an adequate grasp of this case from start to finish. Under Cronic, I would maintain this is a complete breakdown of the adversarial process. Under Strickland, I say if you consider the state's evidence... Well, how could it be a complete breakdown? Did they cross-examine the defense witnesses? I mean, you didn't like everything he did, but you're suggesting that the defense lawyer did virtually nothing, and the record doesn't bear that out at all. Because when he did do things, it's similar to the Kozlowski case. He was active in this case, but all of his active efforts elicited damaging evidence against the client. Or he simply gave up when he wasn't successful in his case. And that has been found to constitute Cronic in cases by this Court. In numerous cases, the failure to grasp the evidence from start to finish, in addition with the elicitation of damaging evidence, has also been found to constitute an effective assistance under Strickland. In this case, the trial court did find the defendant not guilty of aggravated unlawful use of a weapon, counts 3, 4, 5, and 6. Found him not guilty of aggravated unlawful use of a weapon, counts 7 and 8. And further, he was found not guilty of aggravated unlawful restraint, count 13. All on motion of the defendant's attorney to dismiss. Except defendant's attorney never mentioned any of that to the Court. He didn't realize that at the close of the state's case. The trial court was the one to realize that. He said, I agree with you in point, you didn't notice that the state didn't present evidence on these charges. So that's another example of the case. The defense counsel did not understand the case. So that supports our argument of this general lack of an understanding of the case. This was the same trial where defense counsel did proceed initially on the wrong elected case and was repeatedly unprepared or eliciting damaging evidence in this case. He did not seem to have a grasp of the law or the facts. And if you look at all of this in context, it is relevant, all of these mistakes he made, even those that he wasn't prejudiced from because the trial court obviously cured that, when you look at all of these mistakes he made in the law, it's relevant to consider whether the errors he made were professional misjudgment or simply unprofessionalism or incompetence. And when you look at all of that, it seems to point to incompetence in this case. He did elicit evidence used by the trial court to find Mr. Williams guilty, and then he did not properly test the other evidence in this case. There is a reasonable probability that a different outcome could occur under Strickland, and there's no confidence in these proceedings. Thank you. Thank you very much both counsel. This case will be taken under advisement.